My name is William Gavris. May it please the Court. I represent Justin Robert White Cruz, the appellant in this matter, and I would like to reserve two minutes of my time. Your Honors, a party to litigation should not be allowed to sit on its hands with regard to a party that's wanting to litigate that issue in a different form, such as the Court of Appeals. Now there are exceptions to that rule, and one of those exceptions is when the District Court doesn't rule on that issue. We saw that in Pow-Pow. When the District Court doesn't rule on the issue, and the Court of Appeals can address it, then the parties should be able to litigate it, and the party that sat on its hands should be able to participate in that, because a decision has to be made. Counsel, can we cut to the chase? Yes, Your Honor. What issue is it that you're talking about? Are you talking about the reasonable suspicion issue, or whether there was a seizure? What issue are you referencing when you say that the other party, the government, sat on its hands? The government sat on its hands, and the District Court found that the seizure took place at 2 p.m. Right. And that is the issue that the government did not argue. The District Court found that there was a seizure by the mail clerk when the package was delivered, right? Yes, Your Honor. And now the government wants to argue that's clearly erroneous. Yes. And you're saying they don't have the right to do that? That's correct, Your Honor. And why is that? What case is it that you're relying on? Well, I think all of the cases, actually. Well, give us your best one. That's never a good answer to say all of them. Steele-Gauld would be one of the Supreme Court cases there. There, a decision was made contrary to the government's position. The government acquiesced in that finding, didn't raise it until much later in the litigation, actually didn't raise it in the Supreme Court. That was the standing issue. Steele-Gauld, the district court found for the defendant on the standing issue. The government never argued against that. It wasn't until the government found itself in the Supreme Court that it argued against it. And the key word in that case is that the Supreme Court found that because the government acquiesced . . . Now, the government in that case also . . . How did the government acquiesce here? By accepting the finding immediately in front of the district court? Yes. What should the government have done? It should have filed a motion for reconsideration or something like that? In other words, the findings weren't made until the end of the suppression hearing, right? That's . . . I think that . . . Did the government affirmatively present the argument that this is when the seizure occurred or it just didn't disagree with it? Just never addressed that argument. Never addressed it? The time of the seizure. And, yes, the government should have objected to it one way or another. What's the one way or another? That's what I'm trying to find out. Well, the government could have filed . . . One way or another way. The government could have made the argument by the vehicle of a motion for reconsideration, just as I might add the government's doing here today. Why isn't . . . I must be missing something, but why isn't it the plain error standard that applies? If this was the defendant trying to do it, we'd say that it was a plain error standard that applied, right? Your Honor, I think that is a very interesting issue, and I don't think the cases are completely . . . There's a question whether plain error applies to the government, but I think the question is yes, I think. Your Honor, the concept of waiver is an intentional relinquishment of a known right. Well, we don't have that here. Well, it's . . . It's almost like the government wanted it both ways. They wanted the seizure, but they also thought that they were correct in asserting that there was reasonable suspicion for that seizure. Right. And the government wasn't. As we mentioned, it was a post hoc rationale that the court did to take the reasonable suspicion back to 2 o'clock. The intentional . . . There's no . . . It seems to me that this seems like a classic plain error and forfeiture situation. There's no indication that it was an intentional relinquishment of a known right. They just didn't think about it. They didn't say, oh, it appears . . . There's no indication that anybody said, oh, look at that, she made an error about . . . In fact, there was no seizure at 2 o'clock, but we're just going to forget about that. Well, of course, it's a factual issue as to whether or not it was . . . Well, that's right, which may influence how you cut either a plain error or a legal standard kind of discretionary approach to this. Because what could . . . Suppose they had filed a motion for reconsideration. As a practical matter, would that have allowed . . . reopened the hearing or what? I think that would be in the discretion of the district court. But I'd like to address this matter of intentional relinquishment of a known right. We have to remember that in a suppression hearing, suppression argument, there's nothing really more basic, maybe even more basic than standing in some ways, of your quantum of evidence, meaning whether you have reasonable suspicion or probable cause and when it occurred. That's the first issue. Yes, but as a lawyer for a defendant, you don't want a broad understanding of . . . I mean, in general, of what's an intentional relinquishment and absence of some indication that they actually realized this and went by it rather than just screwed up. If it was a defendant, you would not be arguing this. No, probably because I'm trying to be an advocate. But we can also assume that the government read the decision of the district court after it was published and yet nothing followed. Can I ask another question? Do you have any argument at all, I gather you don't, that there wasn't a clear error? In other words, do you contest their concession or their present argument? Do you have any argument that, in fact, there was a seizure? Yes. Okay. Could you give us that, please? Yes, Your Honor. It's because the agent told Ms. Aguilar, the postal employee, to hold the items, the packages, at 2 o'clock. Did he say hold or to call? That's a big difference, whether or not he actually directed the clerk to hold the packages or just to notify him if packages came. Which was it? She testified that she knew she was supposed to hold it. What did she testify regarding what the officer told her? She did not testify to that, Your Honor, the specific words. So where is the testimony that you are relying upon to support your argument that she understood that she was to hold the packages? Where is that in the record? Your Honor, I do not know that off the top of my head. Why don't you look at it when you take your break? Thank you. Yeah, find us the record site. That's important. Okay. All right. You want to reserve two minutes for rebuttal? Yes, I do. Thank you. Okay. Thank you. Good morning, Honors. Garth Backe on behalf of the United States. I think the three points that are referenced in the appellant's opening brief regarding the holding or seizing of the package can be found at – 320, 319, and 353. All of the evidence supporting the contention that it was seized came through loaded questions and cross-examination. For example – Why does that matter? It's still evidence. True, Your Honor. It does. But what it was, it was a question, did you instruct her to hold the package? Yes, I did. But we would say that that's trumped by the actual testimony of the clerk, Mrs. Aguilar, who testified she in no way, shape, or form did hold it. But wouldn't that be up to the district court to decide how much weight to put on the cross-examination evidence as opposed to the testimony from the clerk? I would just submit that instructing someone to hold something has no consequence or effect unless the person actually holds it. So I don't think you can say by instructing her to hold it, any seizure occurred absent a literal holding. Well, it doesn't matter whether – if she was instructed to hold it and we don't – and if they had come, she in fact wouldn't have given it to them. Do we have any testimony about what would have happened if they came? Well, she says she – she, I think it was pretty clear in her testimony, she put the note in the – Well, I understand that. She put the note in the box and she left the box on the floor. But was there any testimony about it? Yes, someone came and she delivered it. No, someone came the following day and she was told at that point to deliver it. But if they had come before the police came – There was a question by defense counsel. You weren't going to deliver it, were you? And she didn't answer the question and they moved on. So this is all, to me, pertinent to the waiver slash forfeiture slash plain error problem because the question is would that all have been – would it have mattered? And if it would have mattered, would it have been fleshed out if it mattered? Your Honor, this is obviously not the government's finest hour. That's not – I'm not saying that we should be complimented on the way we handled this case. But I don't think there's – I can represent there's nothing nefarious going on. No, I know nothing nefarious is going on. No, it's not strategic advantage. It's not tactical. Well, that's all fine. But if by messing this up in the district court, you truncated a record that might have come out better for the defendant, that's the question. Understood, Your Honor. And so then from that, I'll take – this court has repeatedly recognized that you may affirm based on any basis supported by the record. This court has also said – But why doesn't plain error apply? I mean, if this was a defendant, we'd be applying plain error. And also, we can't affirm on any basis when it involves a credibility finding and a factual finding by the district court. We have to find that it was clear error. I mean, the district court is there making credibility determinations. We can't just say throw that out and find some other basis in the record. Your Honor, I don't think you can point to any evidence that supports the conclusion that the package was ever seized or held or any of that stuff. There's no evidence to support that other than the question, did you instruct her to do that? And as I said, even if they did instruct her to do that, that is of no consequence unless she actually does it. But what is the answer to my conceptual question? If she does it in the sense that had they showed up, she wouldn't have given it to them? There's no evidence. I know, but is that good enough? In other words, suppose it was put to her directly. Had they showed up before the police did, would you have given it to them? And she says, no, I understood. I wasn't to do that. But they didn't show up. Is that a seizure or not? That question was tried to be asked of her. I understand, but I want an answer to the legal question. What's the legal question? Was that a seizure if that was what happened? Would you have? Would you have if they had showed up? No, I don't think that's a seizure. Did you? Why wouldn't that be a seizure? Because it's hypothetical. If something would have happened, would you have done this? I mean, it's speculation. It's hypothetical. Did someone come and did you refuse to give the package? Now we have a seizure. That reflects her understanding of what she was to do with the package. But you said until it's actually effectuated. Yes, Your Honor. So the happenstance that the owners of the package came before the officers would have negated a seizure. That's your argument? If they would have come in between that time and she refused to deliver it, yes, absolutely, a seizure would have occurred. And it doesn't matter whether it's her understanding that she was to have refused to deliver it. No, I do not believe that. That she was told to refuse to deliver it. But doesn't a seizure encompass exercising control over something? And if the officer exercised control by telling her to hold it, why isn't that enough to be a seizure? Because there has to be a meaningful interference with someone's possessory interest for a seizure to occur. And her testimony was quite clear. It just sat there. But this is the hole in it. We need an answer to the conceptual question, it seems to me, before we can get an answer to the waiver of forfeiture or plain error. Because if it would have made a difference whether she – I understand the record doesn't establish it. But if it would have made a difference what the record would have established had it been litigated, then you have a different conclusion, it seems to me, as to whether there is a prejudice to the defendant by deciding now on the current record whether there was a clear error if they didn't have a chance to make the right record. But I feel that they did, Your Honor, fully litigate and explore and probe this issue. Well, wait a second. There was that question, but you – sorry, I'm going to sneeze. Sorry. I'm allergic to all the lays we've been given. So the question was, okay, but you weren't going to deliver that package. You were going to give it to the DEA, correct? And there was no response, but that's the key question. Like if she was holding it for the DEA, that would have been a seizure as opposed to holding it for waiting for PMB 11-0 something to show up. If she would have said yes to that question, I don't think it changes anything because there's no evidence that someone did come and tried to get it. So your legal position is that it wouldn't matter whether she was, in fact, told to and did understand that she was to keep it because it didn't eventuate. There has to be a meaningful interference. I mean, that's the requirement. And saying I would have done something is not going to change anything. Is there any case that's similar to this on that hypothetical, on that understanding that she would have kept it? She was told to keep it. She would have kept it, but they didn't show up. We're dealing with uncharted territory in numerous regards. Now, let me go back on the waiver forfeiture question. I started this, but I would have thought that plain error would be what we'd be looking at. Plain error does apply against the government, doesn't it? Not that I'm aware of, Your Honor, and I don't know how we would have attacked it at any point in time in this litigation. I mean, we wouldn't have sought an appeal on a motion that we prevailed on. Well, I know, but even what you're trying to do, I would think that we would apply a plain error standard because you didn't raise it previously, and we would therefore ask the kinds of questions you would ask under the plain error standard. I don't know why you would – I'm sorry, what? I'm sorry. I've never seen plain error put upon an appellee to the extent that that is going to be imposed. I think I have, but I need to check that. That will be imposed upon us if we think we would satisfy it. For the factual reasons that the error – I was in trial counsel, and I picked this up pretty quickly. I think the error was obvious. I think it was plain. And I think that justice actually supports affirming based on the record that was presented. If this court will allow the government to raise standing for the first time when it's never addressed, which means really never fleshed out and litigated. Well, standing is a part of the jurisdictional rubric, isn't it? If it's Fourth Amendment, no, then it's just – Oh, okay. But if you're going to allow the government to raise standing, which is not litigated and obviously not probed into, then you should certainly allow it to be done in this case. It was a necessary subset of his claim. Something feels different – I'm not sure I can put it in words – which is what you're doing, saying the district court made a factual error. And that's what you're asking us to conclude, not simply that there was an issue that wasn't raised and therefore wasn't decided. It's not that the issue wasn't raised. It's that it was raised and decided, and now you're saying it was clear error. Now, I understand that you don't have to cross-appeal, I think, because you're not contesting the judgment. But you certainly are not simply – it's something more than simply asking us to decide something that wasn't decided. It was decided, and it was decided against you. I would couch it as we're asking you to affirm the lower court, which reached the proper result through faulty reasoning. So is the problem that if we deem the factual finding correct, not clearly erroneous, there was a seizure, but it was not supported by reasonable suspicion at that time? We can see there was not reasonable suspicion when she – if she would have seized it at that time. So then you would lose? Yes. Okay. All right. Thank you. You're over your time. Thank you very much. And, counsel, you saved two minutes, but you don't have to use it all. Your Honors, Ms. Aguilar was told by the agent to hold the package. The district court found that had she not been told that, the package would have been timely delivered. Now, there may not have been – But the problem was it was timely delivered in the sense that it was delivered when the people came for it. There may not have been evidence that while the package was being held by Ms. Aguilar that anyone came in to take and ask for the package. Likewise, there was no evidence that no one came in and asked for the package. Is that right? Yes. And so the question is burden. If government agents when delivering an express mail package to someone's house can make the argument, well, the defendants didn't prove that somebody was home to accept the package. They hold the package for six months. That's not the same. They actually hold it. In this case, the question is whether or not the clerk actually held the package. And the best evidence of that is whether or not she would have given the package to the recipients had they come in. And that question was asked of her, but she never answered that question, whether or not she would have given the package to the named recipients if they had come in. That's true, but we have a finding by the trial court that she was told to hold the package. We do know she was told to hold the package, and we also have a factual finding by the trial court that she wouldn't have delivered it. Is that right? What's that factual finding? Well, the court says that had it been ---- What page are you on? You were going to find us the page.  Okay, where's the page that she would have held it and would not have given it to the recipients? The court's specific finding is that had ---- What page? I'm sorry. Of the opinion? You're looking at the opinion? I am looking at the opinion, Your Honor. Okay. What I see is he said she then called Officer Powell's informer, asked her to set the packages aside for him to examine, and Ms. Aguilar did as instructed. That's what I see. Is there something else? Well, yes, there is. In the opinion, the trial judge did say that had she not seen the package ---- Where? I don't have that in front of me, I'm afraid. That's a very important point. It's a pivotal point because if the district court found that she would not have delivered the package to the recipients, then that's the intention, to interfere with the delivery of the package. The district court could find that from the refusal to answer the question directly. She could draw a negative inference, but I don't know where she found that. All right, your time is up. Thank you. In fact, you're over your time. Why don't you write down, if you find the site to the statement, the finding you indicated, write down show opposing counsel and hand it to the clerk. On page 10 of the opinion, the court says, instead of delivering the Sullivan and Sullivan 2 package, detain them as instructed. Is that what you're talking about? No, Your Honor. Okay. Good to me. Well. Thank you. U.S. versus Cruz is submitted. We will take up Shin versus U.S.
judges: Wardlaw, Berzon, Rawlinson